UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ex rel.<br>DARRELL FLOWERS,<br><br>          Petitioner,<br><br>          v.<br><br>DONALD GAETZ, Warden,<br>Menard Correctional Center,<br><br>          Respondent. | No. 09 C 1303<br><br>Hon. Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

In March 1995, Petitioner Darrell Flowers pleaded guilty to charges of murder and armed robbery in connection with the stabbing death of Dorothy Moore and was sentenced to consecutive prison terms of 60 and 30 years. Flowers's direct appeal was dismissed in July 2001. His post-conviction appeal in the Illinois courts was dismissed in October 2003, and Flowers failed to seek federal habeas review within one year of its termination as required by statute. In August 2006, Flowers's filed a second successive post-conviction appeal in the state courts, which was also ultimately dismissed. Flowers filed his *pro se* petition for federal habeas relief in this court in February 2009. Respondent Donald Gaetz, Warden of the Menard Correctional Center, moves to dismiss Flowers's petition as untimely. For the reasons stated herein, Respondent's motion to dismiss is granted.

## BACKGROUND

Flowers appears to concede that his habeas petition is untimely. Nevertheless, Flowers asks the court to consider his petition because, he asserts, he has been prevented from timely filing by virtue of his mental incapacity. Flowers further claims that the psychiatric treatment and medication provided to him while in prison exacerbated and prolonged his inability to understand and assert his legal rights. This treatment, he contends, constitutes a state-imposed impediment to the timely filing of his petition. In the alternative, Flowers contends that his mental incapacity

entitles him to equitable tolling. Before addressing these arguments, the court recounts the facts as found by the Illinois courts, paying particular attention to Petitioner's claimed mental incapacity and treatment.[1]

I.  **Petitioner's Plea and Sentence**

In March 1995, Petitioner pleaded guilty to charges of first-degree murder and aggravated robbery in the Circuit Court of Cook County, Illinois. *People v. Flowers*, No. 1-00-0369 (1st Dist. Ill. App. June 29, 2001) (Rule 23 Order, Ex. C to Resp.'s Mot. at 1.) Petitioner confessed that he and his girlfriend, Markiesha Johnson, had robbed and murdered Johnson's landlady, Dorothy Moore. (*Id.* at 2.) On December 11, 1992, after waiting for Moore for approximately 90 minutes, Johnson and Petitioner ambushed Moore in her garage as she arrived home. (*Id.*) Petitioner forced Moore into the back seat of her car, where Johnson stabbed Moore several times with a five-inch steak knife. (*Id.* at 2-3.) Johnson then handed the knife to Petitioner, who stabbed Moore in the left side of her chest. (*Id.* at 3.) After this brutal assault, Petitioner and Johnson took $45 from Moore's wallet and left. (*Id.* at 3.) Moore died of multiple stab wounds to her neck, chest, and upper body. (*Id.*) The state initially sought the death penalty but ultimately agreed to a plea bargain pursuant to which the court sentenced Petitioner to 60 years in prison for murder and 30 years for aggravated robbery, to be served consecutively. (*Id.* at 4; *People v. Flowers*, No. 1-95-3949 (1st Dist. Ill. App. June 30, 1998) (Rule 23 Order, Ex. A to Resp.'s Mot. at 1).)

Prior to the guilty plea proceeding, Petitioner's lawyer requested a psychiatric evaluation to determine whether Petitioner was competent to stand trial and sane at the time of the murder. (Rule 23 Order, Ex. A to Resp.'s Mot. at 1.) On June 7, 1994 , Dr. Albert Stipes of the Illinois Psychiatric Institute reported to the trial court that, based on his examination, Petitioner was

---

[1] When a petitioner fails to present clear and convincing evidence challenging the statement of facts set forth by a state court on appeal, a federal court presumes those facts to be correct for the purpose of its habeas review. 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). As Petitioner does not dispute the underlying facts, the court draws its factual account from the Illinois Appellate Court's orders in this case.

mentally fit to stand trial. (*Id.* at 2.) Dr. Stipes stated that Petitioner "was in contact with reality" and showed no evidence of psychosis nor any significant intellectual defects. (*Id.*) Stipes also stated that, in his opinion, Petitioner had been legally sane at the time of the offense. (*Id.*) It was Stipes's view that Petitioner was malingering, as his responses during the examination indicated that Petitioner was deliberately "exaggerating his symptoms." (*Id.*; Rule 23 Order, Ex. C to Resp.'s Mot. at 3.) The psychiatric summary included with Stipes's report noted that Petitioner reported taking the antidepressant drug Prozac and the allergy-relief medication Benadryl. (Rule 23 Order, Ex. A to Resp.'s Mot. at 1.) Petitioner also reported having previously taken the antidepressant drugs Zoloft and Sinequan and the anti-psychotic drug Thorazine, but had discontinued those medications due to adverse side effects such as swelling in his hands and feet. (*Id.*) Stipes diagnosed Petitioner as suffering from adjustment disorder and noted that Petitioner displayed some symptoms of situational depression, but concluded that Petitioner was fully capable of understanding the proceedings and assisting his counsel and was otherwise fully competent to stand trial. (Rule 23 Order, Ex. C to Resp.'s Mot. at 3-4.)

In accepting Petitioner's guilty plea, Judge John Madden of the trial court admonished Petitioner in accordance with the Illinois Supreme Court Rules. (Rule 23 Order, Ex. A to Resp.'s Mot. at 1.) Judge Madden asked Petitioner a series of questions about the charges against him, the possible sentences, the waiver of trial rights, and whether he understood the terms of the plea agreement. (Rule 23 Order, Ex. C to Resp.'s Mot. at 4.) Petitioner stated that he understood the questions and the impact of his guilty plea and that he wished to proceed, and the parties stipulated to Petitioner's involvement in the murder. (*Id.* at 1.)

During an interview for his pre-sentence investigation report, filed in March 1995, Petitioner reported that he had again begun taking daily doses of Thorazine and Sinequan. (Rule 23 Order, Ex. A to Resp.'s Mot. at 3.) Petitioner's attorney asked for a continuance at the sentencing hearing because, as counsel told the court, Petitioner had conferred with a psychiatrist at the jail and had expressed concerns that he had not made a reasoned decision to plead guilty. (Rule 23 Order, Ex.

3

C to Resp.'s Mot. at 5.) The case was held over for a week, at which time Petitioner's attorney told the court he had learned that Petitioner had spoken with a jail worker, not a psychiatrist or other healthcare professional, and that counsel saw no reason to believe Petitioner was not fit to go forward. (*Id.*) Following evidence in aggravation and mitigation, Petitioner made the following statement before the court:

> I would like to say that I'm very sorry for our proceedings. Something that is so tragic. I never meant to cause any harm. And I not only caused harm to Miss Moore's family, but I caused harm to my family. And Markiesha Johnson's family. They [sic] life may never be the same. My family's life will never be the same. My life will never be the same, all because of a stupid mistake. I put a lot of people through a lot of pain. I never meant for my life to turn out like this, nor did I never [sic] meant for anything like this to happen to Miss Moore. I would like to turn to her brother. And I would like to say that if I could take my own life and bring your sister's life back, I would. I mean it from the bottom of my heart. I'm sorry. I wish there was more I can [sic] do.

(*Id.* at *6.*) Petitioner was then sentenced in accordance with the plea agreement. (*Id.*)

In August 1995, Petitioner filed a *pro se* motion before the trial court, asking that his sentence be reduced because he had been on psychotropic medication that, he claimed, had "severely impaired [his] reasoning and decision making ability" before and after his sentencing. (*Id.*) Petitioner stated that he "was not in the proper frame of mind to sign away or off on a 90 year guilty plea." (*Id.*) The trial court denied the motion.

## II.     Petitioner's Direct and First Post-Conviction Appeal

In his direct appeal to the Illinois Appellate Court, Petitioner sought the reversal of his conviction, contending that his guilty plea was involuntary and that the trial court erred by failing to order a full fitness hearing. (*Id.* at 1.) On February 14, 1997, while that direct appeal was pending, Petitioner filed a separate *pro se* petition for post-conviction relief in the Circuit Court of Cook County, contending that his trial counsel had been ineffective for failing to seek a fitness hearing. (Post-conviction Petition, Ex. D. to Resp.'s Mot.) On June 30, 1998, the state appellate court remanded the case on direct appeal to the trial court to determine whether Petitioner had indeed been taking psychotropic medications at the time of his guilty plea and, if so, to conduct a hearing

4

to determine whether Petitioner was mentally competent at the time of his plea. (Rule 23 Order, Ex. C to Resp.'s Mot. at 10-11.)

On remand from the direct appeal, Petitioner retained psychiatrist Dr. Daniel Hardy of Loyola University to examine Petitioner and opine on his fitness and competency. Hardy reviewed Petitioner's medical records, and he examined Petitioner in April 1999. (Rule 23 Order, Ex. C to Resp.'s Mot. at 7.) According to Hardy, the medical records indicated that Petitioner had been treated with large doses of Prozac, moderate doses of Sinequan, and low doses of Thorazine prior to giving his plea and while awaiting sentencing. (*Id.* at 8.) Hardy reported that he found Petitioner cooperative, but that Petitioner displayed signs of memory and concentration deficits and psychomotor agitation. (*Id.*) In Hardy's opinion, at the time of his examination in 1999, Petitioner "could not adequately identify the functions of a judge, his attorney, the prosecutor, or a jury." (*Id.*) Hardy diagnosed Petitioner with schizoaffective disorder, bipolar type, and stated that, in his medical opinion, Petitioner was not legally competent either at the time of his plea or at the time of his 1999 examination. (*Id.*)

Dr. Stipes also examined and reevaluated Petitioner in July 1999. (*Id.*) Stipes largely repeated his earlier report; he stated that Petitioner showed no signs of psychosis or intellectual deficit, that Petitioner had been able to understand the charges against him and to assist his counsel, and that Petitioner was fully fit and competent at both the time of his plea and the time of his reexamination. (*Id.* at 9.) Stipes further stated that Petitioner required no medication in order to be legally competent, but he agreed with Dr. Hardy that Petitioner could benefit from treatment with an antidepressant. (*Id.*)

In January 2000, the trial court, presided over by Judge Stuart Palmer on the remanded direct review, conducted a retrospective fitness hearing for Petitioner. The parties stipulated that if called to testify, Dr. Ralph Carreira of Cermak Health Services, who treated Petitioner during his incarceration in 1995, would have stated that Petitioner was taking 50 mg of Thorazine and between 150 and 200 mg of Sinequan per day at that time. (*Id.* of 10.) The state then called

psychiatrist Dr. Kwan-Bo Jin, who evaluated and treated Petitioner while he was in jail in May 1995. (*Id.*) While Petitioner objected to Jin's testimony because Jin had not evaluated Petitioner until May of 1995 (after his plea and sentence were entered), the court reasoned that Jin's testimony was relevant because Petitioner was medicated at the same levels while in Jin's care as he had been at the time of the plea. (*Id.*)

Jin testified that, as of May 1995, Petitioner was "doing fairly well" on his treatment of 50 mg of Thorazine and 200 mg of Sinequan. (*Id.*) Jin explained that Thorazine is a major tranquilizer often used to treat schizophrenia or psychotic symptoms, but that the dose Petitioner received was "next to nothing." (*Id.* at 10-11.) Jin stated that treatment for psychotic conditions usually required between four to 14 times the dosage of Thorazine that Petitioner was receiving, and that 50 mg is usually prescribed for people having difficulty sleeping. (*Id.* at 11.) Jin described the possible side effects at this dosage as dry mouth, slightly blurry vision, constipation, and occasional lightheadedness–nothing that would affect one's ability to think or reason. (*Id.*) Jin explained that Sinequan is an antidepressant also commonly used as a sleep aid. (*Id.*) According to Jin, the usual dose for Sinequan is 200 to 350 mg per day, and, although it causes mild side effects similar to those resulting from Thorazine, Sinequan also has no impact on one's ability to think or reason. (*Id.*) Jin concluded that the medications Petitioner was receiving, even in combination, would not have altered Petitioner's cognitive abilities at all. (*Id.*)

Jin acknowledged that at the time of his examination in May 1995, Petitioner was having difficulty controlling his impulses and was experiencing moderate mood swings. In Jin's view, Petitioner's emotional responses were normal in light of the fact that he was facing a 90-year prison sentence. (*Id.* 11-12.) Jin admitted that treatment with Sinequan might have slightly heightened Petitioner's emotional impulsiveness and irritability, but he insisted that Petitioner did not suffer cognitive impairment. (*Id.* at 12.) While depression, anxiety, and lack of sleep can be detrimental to decision-making ability, Jin stated, there was no reasonable scientific basis to suspect that Petitioner had ever suffered cognitive impairment or a reduced ability to reason. (*Id.* at 12-13.) On

6

cross examination, Jin admitted that in some doses, Thorazine can slow down one's thought processes, but he reiterated that the low doses of Thorazine Petitioner was taking would not have caused him to prescribed to be less aware of the implications of important decisions. (*Id.* at 12.) Following Jin's testimony, the state rested. Petitioner declined to present any testimony and also rested. (*Id.* at 14.)

Based on the medical evidence, the trial court found that Petitioner was mentally fit and competent at the time that he entered his guilty plea and was sentenced. (*Id.*) In a separate order issued at the same time and referencing the proceedings on remand, the court simultaneously dismissed Petitioner's first post-conviction petition. (*Id.*) Petitioner appealed both orders, challenging the retroactive determination of his fitness and the dismissal of his post-conviction petition. On June 29, 2001, the Illinois Court of Appeals affirmed the lower court's retroactive fitness determination, but vacated the dismissal of Petitioner's post-conviction petition because, while the lower court had determined that Petitioner was fit at the time of his plea, it had not made any explicit findings as to whether Petitioner was presently fit to participate in post-conviction proceedings. (*Id.* at 20-23.)[2] The case was remanded and the trial court was instructed to conduct further post-conviction proceedings if it determined that Petitioner was fit to participate. (*Id.* at 24.)

While on remand on December 4, 2001, Petitioner filed a supplemental post-conviction petition in the trial court, arguing that his imprisonment violated his right to fundamental fairness because his 90-year sentence was disproportionately greater than the sentence given to his co-defendant, Markiesha Johnson. (Petition, Ex. E to Resp.'s Mot.) Despite being equally involved in the crime, Johnson had been able to reach a plea agreement with prosecutors for a 45-year

---

[2] Under Illinois state procedural rules, if a bona fide doubt as to a defendant's fitness to participate in post-conviction proceedings is raised, the defendant is entitled to an evidentiary hearing to determine competency. The level of competency required to participate in post-conviction proceedings is lower than that required at trial. On post-conviction review, a defendant is only considered unfit where he is incapable of communicating potential constitutional deprivations. *See People v. Johnson*, 191 Ill. 2d 257, 260-69, 730 N.E.2d 1107 (2000).

7

sentence four days prior to Petitioner's plea entry. (*Id.*)[3] Petitioner also claimed that his counsel had been ineffective for failing to raise this disparity in argument before the court. (*Id.* at 3.) Finding that Petitioner's petition was legally insufficient to entitle him to relief and that Petitioner was not entitled to an evidentiary hearing on the matter, the trial court dismissed the post-conviction petition. (Order, Ex. F to Resp. Mot. at 7.)

Petitioner appealed and, on June 30, 2003, the Illinois Appellate Court affirmed dismissal of the post-conviction petitions. (Rule 23 Order, Ex. G to Resp. Mot. at 10.)[4] On October 7, 2003, the Illinois Supreme Court denied leave to appeal. (Order Denying PLA, Ex. I to Resp. Mot.) At this point, all of Petitioner's post-conviction claims had been dismissed by the state courts, and the tolling of the statutory period for Petitioner to file a timely federal habeas petition ended.

## III. Petitioner's Second Post-Conviction Appeal

Petitioner took no further action for almost three years. On August 1, 2006, he filed a second successive post-conviction petition in state court, contending that newly discovered evidence[5] showed (1) that his guilty plea was unknowing and involuntary and (2) that counsel was ineffective for failing to request a fitness hearing before sentencing and failing to adequately

---

[3] While the Illinois Appellate Court agreed that Johnson and Flowers had participated in Moore's murder to the same degree, it found that the co-defendants were not similarly situated. "Johnson had no previous criminal record, while, at the time of Moore's murder, [Petitioner] was still serving a sentence of probation for the criminal sexual assault of a 14-year-old girl." (Order, Ex G to Resp. Mot. at 9.)

[4] For reasons that are not clear, the state Appellate Court characterized its earlier decision as "affirm[ing] the trial court's findings as to [Petitioner's] fitness to engage in post-conviction proceedings," even though that decision explicitly states that remand was warranted "because the trial court should have conducted a present-day fitness hearing with respect to [Petitioner's] ability to participate in post-conviction proceedings . . . ." (*Id.* at 5; Rule 23 Order, Ex. C to Resp.'s Mot. at 1.) The appellate court nevertheless proceeded to reject Petitioner's claims on their merits, and affirmed dismissal on that basis.

[5] Though Petitioner's brief in support described this newly discovered evidence as "medical reports and affidavits," Petitioner failed to supply such evidence or any supporting documentation to the court when filing his petition. (Order, Ex. K. to Resp. Mot. At 6.)

8

investigate Petitioner's history of mental illness. (Petition, Ex. J to Resp. Mot. at 1-2.) The trial court dismissed the successive petition on October 20, 2006 without a hearing, concluding that Petitioner's counsel had effectively investigated his mental condition by requesting and reviewing psychiatric evaluations. (Order, Ex. K. to Resp. Mot. at 6-7.) The court also found that Petitioner's involuntary plea claim was both barred by *res judicata* and without merit. (*Id.* at 9-10.) The appellate court affirmed the dismissal in October 2007, finding that Petitioner had failed to establish the cause and prejudice required for a successive petition under Illinois law. (Rule 23 Order, Ex. L to Resp.'s Mot. at 8-14.) On January 30, 2008, the Illinois Supreme Court once again denied leave to appeal. (Order Denying PLA, Ex. N to Resp. Mot.)

### IV. Petitioner's Habeas Petition

On February 24, 2009, Petitioner filed a *pro se* petition for a writ of habeas corpus in this court, claiming that his incarceration violated the federal constitution because: (1) his plea was not voluntarily in that he was taking psychotropic drugs at the time, (2) his trial counsel was ineffective for failing to request a fitness hearing, (3) the disparity between the length of his sentence and that of his co-defendant violated fundamental fairness, and (4) Petitioner's appellate counsel was ineffective for failing to adequately raise the above arguments. (Petition, D.E. 7.) Respondent moves to dismiss the petition as time-barred under 28 U.S.C. § 2244. For the reasons explained below, the court grants Respondent's motion.

## DISCUSSION

### I. Statute of Limitations for Habeas Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which took effect on April 24, 1996, amended existing federal law by imposing a one-year statute of limitations on applications for the writ of habeas corpus by state prisoners. 28 U.S.C. § 2244(d)(1). That provision says in part:

The limitation period shall run from the latest of --

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1). AEDPA was enacted to reduce delays in the execution of state and federal criminal sentences. *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). "Congress wished to curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law." *Williams v. Taylor*, 529 U.S. 362, 386 (2000) (opinion of Stevens, J.) The one-year limitation period demonstrates AEDPA's policy favoring finality in state judgments. Accordingly, the limitation period tolls only during the pendency of a properly filed application for state post-conviction review, 28 U.S.C. §2244(d)(2), and, in extraordinary circumstances that are outside of the petitioner's control. *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008).

**II.     Petitioner's Claims are Time-Barred**

The conclusion of direct review in Petitioner's case came on July 20, 2001–twenty-one days after the Illinois Appellate Court affirmed the lower court's retroactive fitness determination–upon the expiration of Petitioner's time to file a PLA with the Illinois Supreme Court. *See Hughes v. McCann*, 521 F.Supp.2d 750, 753-54 (N.D. Ill. 2007)(when a petitioner fails to file a PLA on direct appeal, the limitation period begins when the period to file a PLA expires). The pendency of Petitioner's first post-conviction petition, filed in February 1997, immediately tolled the period under § 2244(d)(2), however. In the same order in which it affirmed the trial court's judgment in Petitioner's direct appeal, the Appellate Court vacated the trial court's dismissal of Petitioner's post-

conviction petition and remanded to the trial court for further proceedings. (Rule 23 Order, Ex. C to Resp.'s Mot. at 7.)

Tolling under § 2244(d)(2) ended for Petitioner on October 7, 2003 when the Illinois Supreme Court denied him leave to appeal the dismissal of his post-conviction petition. (Order Denying PLA, Ex. I to Resp. Mot.) Thus, under AEDPA, Petitioner had one year from that point, until October 7, 2004, to seek timely federal habeas review. Instead, Petitioner did nothing, and almost three years passed before he filed his successive petition for post-conviction review in the Illinois courts on August 1, 2006. Because this successive petition was filed after the termination of the limitation period, it had "no tolling effect whatsoever on the AEDPA statute of limitations." *Graham v. Borgen*, 483 F.3d 475, 483 (7th Cir. 2007). Nor did the state court's consideration of a successive petition restart the clock or open a new window for federal collateral review of Petitioner's case. *De Jesus v. Acevedo*, 567 F.3d 941, 942-43 (2009). "A state's latitude or lassitude with respect to time does not extend the AEDPA's limit." *Id.* at 943. Since more than a year has passed since the close of Petitioner's direct appeal, without tolling, Petitioner's claims for habeas relief are time-barred.

## III.    No State Impediment

Petitioner advances several arguments in an attempt to get around the statute of limitations. First, Petitioner advances the novel claim that the state's attempts to treat his mental health problems using psychotropic drugs prevented Petitioner from filing a timely habeas petition and should extend the limitation period under the state-impediment provision of 28 U.S.C. § 2244(d)(1)(B). According to Petitioner, this "impediment continues until the present, whereas, the only reason this Petitioner was able to file the instant Petition was due to meeting the PAL and the passion of the PAL against injustice . . . ."[6] (Pet. Rep. at 5.) Petitioner cites no authority that

---

[6]    PAL stands for "prisoner at law," that is, a type of lay *pro se* assistant who aids
(continued...)

11

supports his theory that state-rendered mental health treatment could constitute a state impediment under § 2244(d)(1)(B), and this court is not aware of any precedent supporting such an argument.[7]

The record in this case demonstrates that Petitioner was receiving psychiatric treatment from state doctors at various times during his incarceration. The record also indicates that Petitioner was intermittently taking low doses of the anti-psychotic medication Thorazine and moderate to high doses of antidepressants. In addition, Petitioner submits copies of Illinois Department of Corrections mental health records, which indicate that he has also been treated with the antidepressant drug Celexa and Risperdal, a drug commonly used to treat symptoms of schizophrenia and bipolar mania. (Records, Ex. 1 to Pet.'s Rep.) Assuming Petitioner has been treated with all of these drugs throughout his incarceration, Petitioner still fails to explain how this treatment constitutes a state action "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2244(d)(1)(B). Petitioner does not allege that he has been medicated involuntarily, nor does he offer any evidence to substantiate his allegations that his medications caused or contributed to his inability to file a timely habeas petition. Petitioner makes no attempt to distinguish between the effects of the medications and the consequences of his underlying mental health issues. Petitioner does not adequately explain how he is now able to capably pursue his federal claims in spite of the fact that he has continued to receive state-supplied treatment and medication. The only evidence in the record on this topic, the testimony of Dr. Jin, suggests that the

---

[6](...continued)
prisoners in conducting legal research and preparing post-conviction motions.

[7] In the alternative, Petitioner claims that his mental illness prevented him from discovering the factual predicate of his habeas claims through the exercise of due diligence, extending the limitation period under 28 U.S.C. § 2244(d)(1)(D). Courts have been clear that § 2244(d)(1)(D) applies an objective standard, in which the limitation period commences "when the factual predicate could have been discovered through the exercise of due diligence, not when it was actually discovered by a given prisoner." *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). Petitioner's reliance on this provision, based on his alleged inability to appreciate significant facts, is misplaced.

combination of drugs taken by Petitioner during his incarceration did not impair his cognitive functioning. Given this, the court cannot accept Petitioner's unsupported assertions that his treatment somehow violated the Constitution or laws of the United States and prevented him from timely filing a habeas petition. Section 2244(d)(1)(B) cannot save Petitioner's untimely filing.

**IV.  No Equitable Tolling**

Typically, a petitioner's claim that mental incapacity prevented him from timely filing is considered under an equitable tolling analysis. *See, eg., Lawrence v. Florida*, 421 F.3d 1221, 1226-27 (11th Cir. 2005). Before the principles of equitable tolling may apply, a petitioner must demonstrate, first, that extraordinary circumstances outside of his control and through no fault of his own prevented him from timely filing his petition. *Tucker*, 538 F.3d at 735 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Second, he must show that he has diligently pursued his claim, despite the obstacle. *Id.* This is not an easy test. Equitable tolling "is such exceptional relief" that the Seventh Circuit has "yet to identify a circumstance" that justifies it in the collateral relief context. *Nolan v. United States*, 358 F.3d 480, 484 (7th Cir. 2004). Petitioner has not demonstrated that he is entitled to this exceptional relief.

"Mental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his rights and acting upon them. *United States ex rel. Sowewimo v. Hensley*, No. 04 C 6415, 2005 WL 1498846, at *2 (N.D. Ill June 8, 2005)(quoting *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)). To overcome the time bar, Petitioner "must at least show that he was incapable of preparing and filing a habeas petition" while the limitation period was in effect. *United States ex rel. Kennedy v. Page*, No. 99 C 6067, 1999 WL 1044829, at *2 (N.D. Ill. Nov. 16, 1999). Flowers has made no such showing.

There have been substantial proceedings in this case to determine Petitioner's mental competency, and the Illinois courts have repeatedly found Petitioner competent to pursue his legal rights. At least two psychiatrists, Dr. Stipes and Dr. Jin, separately evaluated Petitioner and

13

determined that he was not rendered incapable of proceeding as a result of his treatment or any underlying mental illness. The Illinois courts chose to credit Stipes's and Jin's findings over those of Petitioner's proffered expert, Dr. Hardy, and those determinations are not unreasonable.

Further, Petitioner's own actions in pursuing his case at the state level belie his claim that he was unable to file a timely habeas petition. At his sentencing hearing, Petitioner delivered a coherent statement of remorse. He filed numerous *pro se* petitions in the state courts, many of which are substantially similar to what a timely habeas petition would have required. For example, Petitioner has not explained why he was capable of filing a PLA in the Illinois Supreme Court on August 11, 2003, but was somehow incapable of filing a federal habeas petition when the PLA was denied shortly thereafter. Petitioner has not alleged facts to suggest that his mental health or treatment conditions worsened during the limitation period. Instead, he claims that he has been consistently impaired at the same level from the time of his guilty plea in 1995 to the present. If this is so, it strains credulity to suggest that, while Petitioner was capable of filing state *pro se* petitions in 2003 and 2007, he was somehow incapable of filing a timely federal habeas petition in the interim.

Petitioner's request for habeas relief is untimely and must be dismissed. Petitioner has made no showing that his mental health or treatment prevented him from timely filing a habeas petition.

## **CONCLUSION**

Respondent's motion is dismiss [15] is granted. The case is dismissed.

ENTER:

Dated: February 10, 2010

REBECCA R. PALLMEYER
United States District Judge